HAROLD M. BURGENER, Plaintiff-Appellee, *v.* J. R. GAIN, Defendant-Appellant.

Fifth District   No. 81-2

Opinion filed November 13, 1981.

Fieger, Quindry, Molt, Harvey, Fyie & Hawkins, of Fairfield (Morris Lane Harvey, of counsel), for appellant.

Schniederjon, Weber, Harvey & Stephens, of Effingham (Frank H. Schniederjon, of counsel), for appellee.

Mr. JUSTICE KARNS delivered the opinion of the court:

Plaintiff, Harold M. Burgener, obtained judgment by confession on a promissory note against the defendant, J. R. Gain, in the Circuit Court of Wayne County. The court granted defendant's motion to open judgment and to plead a defense to plaintiff's complaint. Defendant counterclaimed for credits due from plaintiff under a contract for the sale of plaintiff's business, such credits including, among other things, the accounts receivable. After a bench trial, the court awarded judgment for the plaintiff on a promissory note allegedly given as part of the purchase price of the business in the amount of $63,387.11 which included principal and interest and for the defendant on his counterclaim for $49,043.79 including interest. Both parties have appealed only as to those parts of the judgment relating to the note and accounts receivable and the interest awarded thereon.

The basic issue involved in this appeal is which of several documents constituted the contract of the parties for the sale of plaintiff's business. In order to understand the specific contentions of the parties, a detailed recitation of the facts is necessary.

Plaintiff was the owner of Burgener Well Survey, Inc., an Illinois corporation, engaged in the business of oil well servicing, electric logging and perforating. The defendant was an employee of the corporation. In September 1972, the parties discussed the purchase of plaintiff's business by defendant and plaintiff's son, Harold E. Burgener. Plaintiff's son was a party to the various transactions involved in the present controversy, but he is not a party to this litigation and reference shall be made only to defendant J. R. Gain.

On September 19, 1972, the parties entered into an agreement for the purchase of plaintiff's business by defendant, the purchase price being $105,000, but the listed value of the assets sold was $108,310.90. Accounts receivable were not included in the sales contract. This agreement was contingent upon the defendant obtaining a loan in the amount of $90,000 from a Centralia, Illinois, bank, to be guaranteed by the United States Small Business Administration. The Centralia bank refused to finance the transaction. The parties were refused financing by two other Illinois banks. The parties then sought financing through the Wayne County Bank, where a loan officer referred the parties to a regional office of the Small Business Administration. In October 1972, a representative of the Small Business Administration informed plaintiff and defendant of the requirements for obtaining an SBA loan. The requirements relevant to the instant appeal were that the defendant own assets in plaintiff's business valued at one-third of the amount of the loan and that the accounts re-

ceivable on the date of sale be pledged as collateral for the loan to the Wayne County Bank.

On October 14, defendant submitted a loan application in compliance with the above requirements. In particular, defendant represented to the Small Business Administration that he owned certain tools and accessories valued at $32,310.90, the face amount of the promissory note now in dispute. The Small Business Administration was not told about the note. In addition, the accounts receivable were pledged as collateral. The loan in the amount of $90,000 was approved and closed on December 22, 1972.

The parties entered into another purchase agreement, dated October 18, 1972. The actual date that the agreement was signed is in dispute. The significant differences between the September 19 agreement and the October 18 agreement were as follows: the purchase price was reduced to $76,000, and the accounts receivable on the date of the sale were included in the inventory of items purchased. Two bills of sale were delivered to defendant. The December 19, 1972, bill of sale represented the sale of tools and accessories valued at $32,310.90. The December 23, 1972, bill of sale, in addition to the tools and accessories, covered the sale of several trucks and the accounts receivable. The Wayne County Bank loan officer testified at the trial that the second bill of sale was executed in order to comply with the SBA loan requirements.

The promissory note was dated December 23, 1972. At the trial, plaintiff testified that the note was signed and delivered on that date. Defendant testified that he signed the note sometime in October. Plaintiff testified that the promissory note was given in exchange for the tools and accessories. Defendant testified that the parties never intended the note to be collected but rather it was executed in order to meet the SBA loan requirements.

The accounts receivable were never assigned to defendant and defendant testified that he did not demand the accounts receivable from plaintiff prior to commencement of the present suit. Defendant further testified that he bought one account from plaintiff in order to maintain a friendly relationship with one of his clients. Plaintiff testified that because the defendant's business remained at plaintiff's location, the payments on outstanding accounts were delivered to defendant. Plaintiff further testified that defendant turned these payments over to him.

On appeal, defendant argues that the October 18, 1972, purchase agreement and the December 22, 1972, bill of sale are the sole documents that govern the rights and duties of the parties. In this regard, defendant first contends that the September 19, 1972, purchase agreement (hereinafter referred to as the first agreement) and the December 19, 1972, bill of sale are inconsistent with the October 18, 1972, purchase agreement (hereinafter referred to as the second agreement) and the December 22, 1972,

bill of sale, this inconsistency indicating the parties' intention to abrogate the first agreement and to substitute the second agreement. At trial, defendant objected to the admission of any evidence concerning the first agreement as violative of the parol evidence rule. It is not disputed that the second agreement was inconsistent with and modified the first agreement. We do not agree, however, with defendant's conclusion that the second agreement and the December 22, 1972, bill of sale are the only relevant documents.

■■ Where different instruments are executed by the same parties and in the course of the same transaction, the instruments are to be read and construed together. (*Pecora v. Szabo* (1981), 94 Ill. App. 3d 57, 418 N.E.2d 431.) Here, the parties executed a promissory note, dated December 23, 1972, in addition to the second agreement. Although there is a dispute between the parties as to the actual date the note was executed, it is clear that the note and the second agreement were executed in the course of the same transaction, that is, the sale of plaintiff's business. Because we find that the trial court's finding that the second agreement was not intended by the parties to be a final and complete expression of their entire agreement was correct and not against the manifest weight of the evidence, we reject defendant's conclusion that the second agreement and bill of sale alone control the rights and duties of the parties.

Defendant next contends that the second agreement and the December 22, 1972, bill of sale are clear and unambiguous written expressions of the parties' agreement; and, therefore, the court should look only to these documents to ascertain the parties' intent. The courts frequently admit extrinsic evidence in order to determine whether the parties have expressed their intent clearly. (*Keep Productions v. Arlington Park Towers Hotel Corp.* (1977), 49 Ill. App. 3d 258, 364 N.E.2d 939.) The trial court here properly admitted parol evidence of the negotiations between the parties. Plaintiff testified that the December 19, 1972, bill of sale of certain tools and accessories was given in exchange for the promissory note. The December 22, 1972, bill of sale and the inventory of purchased items attached to the second agreement also included the tools and accessories. This duplication raises uncertainty as to what portion of the assets of plaintiff's business were intended to be included under the terms of the second agreement and what effect the promissory note had on the sales transaction. Clearly, the parties did not express their agreement in an unambiguous, integrated writing. Viewing all the facts surrounding the execution of the documents, we find that the trial court was correct in concluding that the parties substituted the second agreement for the first agreement for a limited purpose and did not intend this substitution to change the proposed transaction as set forth in the first agreement. *Jost v. Cornelius* (1948), 334 Ill. App. 279, 79 N.E.2d 310.

■■ Defendant contends that the obligation underlying the promissory note was satisfied by his payment of the stated purchase price of $76,000 according to the second agreement. Where the court admits extrinsic evidence in order to determine the intention of the parties, the court's construction of the contract will not be disturbed unless contrary to the manifest weight of the evidence. *Keep Productions v. Arlington Park Towers Hotel Corp.* (1977), 49 Ill. App. 3d 258, 364 N.E.2d 939.

Prior to going to the Wayne County Bank, the parties had tried to secure financing from three other banks. During this time the first agreement formed the basis of the proposed transaction. On the advice of a Wayne County Bank loan officer, the parties met with an SBA representative who informed the parties of the requirements for obtaining an SBA loan. One such requirement was that the purchasers own assets in plaintiff's business valued at one-third of the amount of the loan. The purchasers were applying for a $90,000 loan; hence, the SBA required that the purchasers own assets in plaintiff's business valued at $30,000. According to the terms of the first agreement, the total equipment inventory was valued at $108,310.90, which included certain tools and accessories valued at $32,310.90. The purchase price stated in the first agreement was $105,000. After meeting with the SBA representative, the parties entered into the second agreement, wherein the agreed purchase price was $76,000. Significantly, the face value of the promissory note, $32,310.90, added to the purchase price of the second agreement, $76,000, equaled the value of the total equipment inventory, $108,310.90, stated in the first agreement. The facts surrounding the transactions between the parties suggest that they rearranged the terms of the first agreement in order to secure the SBA loan. The parties represented to the SBA that defendant owned the tools and accessories valued at $32,310.90. The parties did not inform the SBA of the note. A fair inference to be drawn from the evidence is that the parties intended the promissory note together with the purchase price recited in the second agreement to be the true agreed purchase price. We, therefore, will not disturb the trial court's judgment in favor of plaintiff on the promissory note.

■■ Plaintiff appeals from the part of the judgment granting defendant a set-off for accounts receivable due on the contract of sale. Plaintiff argues, in substance, that the court's findings that the parties intended the accounts receivable to be part of the bargain is against the manifest weight of the evidence. We agree.

The last paragraph of the equipment inventory attached to the second agreement states as follows:

"All accounts receivable on hand at the date the sale is completed." As discussed above, the parties modified the terms of the first agreement after learning the requirements for securing an SBA loan. The accounts

receivable were not included in the first agreement. The bank loan officer testified that the SBA required the purchasers to pledge the accounts receivable as collateral for the loan. There was no evidence of the value of the accounts receivable so far as their collectibility or how many were paid or remain to be paid.

■■ It is a fundamental principle of contract construction that where the agreement is indefinite, the courts will look to and adopt the interpretation which the parties themselves have placed on it. (*Moran v. Commonwealth Edison Co.* (1979), 74 Ill. App. 3d 964, 393 N.E.2d 1269.) The actions of defendant reveal that he did not consider the accounts receivable to be included within the agreement. Defendant did not demand the accounts receivable from plaintiff prior to the instant suit. Defendant gave to plaintiff checks that he received on the outstanding accounts of plaintiff's business. In addition, defendant purchased one of the outstanding accounts from plaintiff. His explanation for this transaction was certainly not reasonable or to us convincing. Defendant's actions are inconsistent with his present claim of ownership. We find that the parties included the accounts receivable in the second agreement for the sole purpose of obtaining the SBA loan.

The judgment of the Circuit Court of Wayne County is, therefore, affirmed in part and reversed in part, and the cause is remanded for a redetermination of the amount due defendant on his counterclaim.

Affirmed in part; reversed in part; remanded.

KASSERMAN, P. J., and HARRISON, J., concur.